## Case No. 16,204.

### UNITED STATES v. RUGGLES.

[5 Blatchf. 35.] [1]

Circuit Court, S. D. New York. Nov. 19, 1861.

LANDS UNDER NAVIGABLE WATERS — GRANTS BY STATE—INJUNCTION—RIGHTS OF UNITED STATES NAVY YARD.

1. Under the act of the legislature of New York, of April 10th, 1850 (Sess. Laws 1850, c. 283) authorizing the commissioners of the land office of the state to grant lands under the waters of navigable rivers or lakes, and providing that no such grant shall be made to any person other than the proprietor of the adjacent lands, the grant must be confined to a line starting at the intersection with the shore, and extending at a right angle with the thread of the stream, or at a right angle into the lake, without any regard to the course or direction of the line upon the land.

2. A party who has obtained a grant in violation of the statute, as thus interpreted, will be restrained by injunction, at the suit of the proprietor of the land adjacent to the land under water so granted, from erecting docks on the land under water, so granted.

3. Where such adjacent land was owned by the government and used as a navy yard, an injunction was granted to restrain the erection of docks on other land under water properly granted to such party, until it should be shown that such erection would not seriously interfere with the rights of the government as proprietors of the navy yard, and it was referred to a master to inquire into the effect of such erection.

James I. Roosevelt, U. S. Dist. Atty.
Edwin W. Stoughton, for defendant.

NELSON, Circuit Justice. The bill in this case is filed to restrain the defendant [Henry Ruggles] from obstructing the free navigation

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

of the East river, and thereby seriously interfering with ingress and egress to and from the navy yard at Brooklyn. The government purchased the site of the yard on the East river, and obtained from the state a cession of the jurisdiction some sixty years ago, and have since expended upon it millions of dollars, said to amount to five millions, in erections and improvements in fitting it for the uses and purposes for which the purchase was made. The defendant is the owner of a lot of land lying adjacent to and west of the yard, fronting also upon the river, and has procured from the commissioners of the land office of the state of New York, a deed of the land in front, covered with water, extending into the river between six and seven hundred feet. The boundary line of the parties is not at a right angle with the thread of the river, but strikes the shore in an oblique direction. The general course of the river at this place is nearly east and west, and the course of the boundary line, extended into the river, is north forty-two degrees and thirty minutes east, the effect of which is to carry the line thus extended into the water across a part of the water frontage of the navy yard, which, it is claimed, will, when the docks are erected, as contemplated by the defendant, interfere with the free ingress and egress of vessels, and otherwise seriously impair the use of the yard, and will also have the effect to alter the channel of the river, and of the waters of the Wallabout Bay, by deposits of silt and sand, and render access to the yard difficult and hazardous. The grant to the defendant by the commissioners was made under an act of the legislature of the state, passed April 10th, 1850 (Sess. Laws 1850, c. 283), which authorizes them to grant lands under the waters of navigable rivers or lakes, as they shall deem necessary to promote the commerce of the state, or proper for the beneficial enjoyment of the same by the adjacent owner, but provides that no such grant shall be made to any person other than the proprietor of the adjacent lands, and that any such grant that shall be made to any other person shall be void. In my judgment, the true construction of this statute is, that the grant of the water lots, authorized to be made to the adjacent proprietor of the land, must be confined to a line starting at the intersection with the shore, and extending at a right angle with the thread of the stream, or at a right angle into the lake, without any regard to the course or direction of the line upon the land. It is apparent that this is the only construction upon which the intent and purpose of the statute can be carried into effect. The case in hand illustrates the practical difficulty attending any other construction. The government, as well as the defendant, is an adjacent proprietor, within the meaning of the statute, and is entitled to the grant of water lots in front, or, at least, according to the express terms of the statute, no other party is entitled to such grant. And yet, the grant to

the defendant, if allowed, has already appropriated a considerable portion of this very water frontage. I shall, therefore, restrain the defendant from erecting his dock upon any portion of the water lots granted, lying east of a line drawn from the intersection of his eastern line with the shore, in conformity with the interpretation given to the statute, as above explained. And, even with this modification, I shall not at present interfere with the provisional injunction, inasmuch as I am not sufficiently advised, from the proofs in the case, that, with the line drawn in conformity with the true meaning of the statute, as above given, and the docks to be erected confined to the remaining portion of the grant, the effect would not be to seriously interfere with the fair and full enjoyment of the rights and privileges belonging to the government, as proprietors of the navy yard. The large amount of money expended in its erections and improvements, as well as its great public importance and use, and the danger of imperilling them, lead to caution and hesitation upon a question involving all these considerations. A mistake might result in a public calamity. Before, therefore, I shall interfere with the provisional injunction heretofore granted, the case must go before a master pro hac vice, whom I shall appoint, to inquire into the effect of the docks to be erected, even with the modifications stated, upon the free ingress and egress of vessels to and from the navy yard.